UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DONALD JAMES HOGAN,

    Plaintiff,

v.                                      Case No.:  2:22-cv-223-KCD

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

Plaintiff Donald James Hogan sues under 42 U.S.C. § 1383(c)(3)[1] for judicial review of the Commissioner of Social Security's decision denying his application for supplemental security income. (Doc. 1.) The procedural history, administrative record, and law are summarized in the joint memorandum (Doc. 19) and not fully repeated here.

Hogan raises one issues on appeal—whether the ALJ properly considered two medical opinions. (Doc. 19 at 9-20.) The Commissioner contends there is no error. (Doc. 19 at 20-32.) For the reasons below, the Commissioner's decision is affirmed.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

Review of the Commissioner's (and, by extension, the ALJ's) decision denying disability benefits is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a mere scintilla but less than a preponderance. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

When determining whether the Commissioner's decision is supported by substantial evidence, the court must view the record as a whole, considering evidence favorable and unfavorable to the Commissioner. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Dyer*, 395 F.3d at 1210. And even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

The ALJ found Hogan had severe impairments of degenerative disc disease of the lumbar and cervical spine, hepatitis C, opiate dependence in

remission, chronic pain syndrome, drug induced dyskinesia, post-traumatic stress disorder, bipolar disorder, anxiety, and depression. (Tr. 12.) He further found Hogan has the residual functional capacity (RFC) to:

> lift/carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight hour workday; stand and/or walk for six hours in an eight hour workday; occasional climbing of ramps or stairs but no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling and crouching; no crawling; frequent handling and fingering; must avoid concentrated exposure to extreme cold, extreme heat, and vibration; no exposure to hazardous machinery or unprotected heights; able to understand, remember, and carry out simple and detailed tasks while maintaining attention and concentration for two hours at a time before requiring a regular scheduled break; low stress work defined as only occasional decision-making and only occasional changes in the work setting; occasional interaction with coworkers and supervisors; and no interaction except incidental with the public.

(Tr. 16.) Considering the RFC and the other evidence, the ALJ concluded Hogan can perform three jobs that exist in significant numbers in the national economy and thus is not disabled. (Tr. 24-25.)

### A. *James Owen, M.D.*

Hogan first argues the ALJ erred in assessing the opinions of consultative examiner James Owen, M.D. (Tr. 496-74.)

A medical opinion is "a statement from a medical source about what [the claimant] can still do despite [his] impairment(s) and whether [he has] one or more impairment-related limitations or restrictions[.]" 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). When dealing with a medical opinion, the ALJ must consider its persuasiveness using several factors: "(1) supportability; (2)

3

consistency; (3) relationship with the claimant, which includes (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization; and (5) other factors." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Supportability and consistency "are the most important factors" in determining persuasiveness. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). And because of their importance, the ALJ must explain "how [she] considered the supportability and consistency factors for a medical source's medical opinions." *Id.* Put simply, the ALJ must assess the factors of supportability and consistency for each medical opinion.

Dr. Owen examined Hogan in 2020 and opined on Hogan's ability (both mentally and physically) to perform work-related activities:

> I think he would have as I see him today moderate to severe difficulty lifting, handling, or carrying objects. Hearing, seeing, speaking, and traveling would be minimally affected other than the chronic depression and mental status problem.

(Tr. 471.)

In assessing Dr. Owen's opinions, the ALJ shared how he evaluated supportability and consistency:

> Upon consultative examination, Dr. Owen opined the claimant has moderate to severe difficulty lifting, handling, or carrying objects. His hearing, seeing, speaking, traveling were minimally affected other than chronic depression and his mental status problems (Exhibit B6F). The undersigned does not find these opinions persuasive, as they are inconsistent with the diagnostic imaging of

4

> the cervical and lumbar spines. Additionally, the opinions are not consistent with the claimant's treatment history. Moreover, the opinions are not supported by the physical examination findings from Dr. Owen, which showed Straight leg raising was positive on the right side at the supine position in sitting position 60°. Strength, sensation, and coordination were within normal limits except the right side. Ranges of motion were diminished, and he had sort of way forward tile to his gait. Toe walk was 4+/5, left was 5/5. Heel walk was 5/5 bilaterally. Squat was ¾ way down and 5/5. Sensation was normal bilaterally. Reflexes were 1+ at the ankles, 3+ at the knees, and 1+ of the upper extremities. Cranial nerves were intact, Claimant got on and off the examination table, and in and out of the room with a mild limp of the right leg. Lastly, the undersigned notes that the opinions are not entirely consistent with the claimant's activities of daily living that include some work activity (Hearing testimony).

(Tr. 22.) Hogan argues that substantial evidence does not support these conclusions. His arguments seem to focus on Dr. Owen's opinions as to Hogan's physical limitations—that Hogan would have moderate to severe difficulty lifting, handling, or carrying objects. First, he claims the ALJ failed to explain his reasoning and build a "logical bridge" from the evidence to the conclusion that the opinion was inconsistent with Hogan's treatment history and activities of daily living. (Doc. 19 at 11-13.) Second, he says by impermissibly "cherry-picking unremarkable findings," the ALJ wrongly found Dr. Owen's opinion to be unsupported by the physical examination findings. (*Id.* at 14-15.) Each argument is addressed in turn.

Hogan's logical bridge argument fails. In essence, Hogan argues that the ALJ's evaluation of the persuasiveness of Dr. Owen's opinion was conclusory and without explanation. In support, he cites no binding case law, and as the Commissioner points out, a logical bridge simply means that "an ALJ must

articulate at some minimum level, her analysis of the evidence," *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Ultimately, this requirement does not alter the substantial evidence standard. *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021). The ALJ has satisfied the substantial evidence standard here.

The ALJ's decision, read as a whole, supports the rejection of Dr. Owen's opinion that Hogan would have moderate to severe difficulty lifting, handling, or carrying objects. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses" multiple times throughout decision); *see also Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (holding that the ALJ's decision contained a sufficient explanation for the step three finding because the ALJ is not required to "use particular language or adhere to a particular format"). The ALJ discussed the opinion's inconsistency with the record evidence where Hogan had unremarkable strength findings and fingering restrictions contrary to the doctor's opinion. For example, the ALJ discussed treatment records showing that Hogan often exhibited normal strength and tone of the musculoskeletal system; his upper and lower extremities had normal sensation, strength, and tone; strength was 5/5; normal coordination; full range of motion; and he was stable on current treatment. (Tr. 17-18, 20-21, 350, 351, 355, 359, 363, 367,

6

371, 375, 376, 382.) Thus, although the ALJ only briefly addressed consistency when discussing Dr. Owen, elsewhere in his decision, the ALJ thoroughly examined the medical records that support the findings. (Tr. 17-18.) This is sufficient.

Likewise, the decision, read as a whole, supports the ALJ's rejection of Dr. Owen's opinion as inconsistent with Hogan's activities of daily living. Hogan insists the ALJ's statement that "the opinions are not entirely consistent with the claimant's activities of daily living that include some work activity as a part-time landscape laborer" is conclusory because the ALJ failed to specify which activities are conflicting. (Doc. 19 at 12; Tr. 22, 86.) But again, elsewhere in the decision, the ALJ specifies that Hogan's alleged difficulties are inconsistent with his ability to work part-time, perform household chores, and engage in some socialization. (Tr. 14, 21, 23.)

Although discussed in the context of consistency, and with no citation to authority, Hogan also suggests that the ALJ did not comply with the Eleventh Circuit's pain standard by failing to credit his testimony he had bad days when he would only lie in bed; days when he would not eat, shower, or dress himself due to depression and anxiety; that his sister helps him with daily activities such a shopping or laundry, but she will do most of the workload; and that he would call out of work for his part-time job at least one per week due to his anxiety. (Doc. 19 at 13 (citing Tr. 89, 86-87, 93).) Hogan asserts that the ALJ

7

did not explain how these reported activities were inconsistent with a disability finding; instead, the ALJ simply stated that Dr. Owen's opinion was inconsistent with Hogan's daily activities.

In evaluating a claimant's subjective complaints of pain or other symptoms, an ALJ must determine whether there is an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptom arising from that condition or (2) evidence the condition is so severe that it can be reasonably expected to cause the alleged symptom. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Under the Social Security regulations, the ALJ follows a two-step analysis in considering a claimant's complaints. First, the ALJ decides whether there is an underlying medically determinable impairment that could reasonably be expected to cause the claimant's pain or other symptoms. Second, once a claimant has established an impairment that could reasonably produce his symptoms, the ALJ evaluates the intensity and persistence of the symptoms and their effect on the claimant's functioning. 20 C.F.R. § 416.929(a), (c)(1). An ALJ also must consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." 20 C.F.R. § 416.929(c)(4). A reviewing court should ask not whether the ALJ could have reasonably credited a claimant's testimony, but whether the ALJ had been wrong in discrediting it. *Werner v. Comm'r of*

8

*Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). In weighing this evidence, credibility determinations "are the province of the ALJ." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

To preserve an issue for appeal, the party must raise the "specific issue to the district court" so it has "an opportunity to consider the issue and rule on it." *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). Generally, this means that the issue must be plainly and prominently raised, with supporting arguments and citations to the evidence and relevant authority. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).

By not briefing it, Hogan has waived any argument about the ALJ's application of the pain standard. And in any event, he has not shown the ALJ erred. Contrary to Hogan's argument that the ALJ's determination was improperly conclusory, throughout his decision the ALJ explicitly articulated the reasons for discrediting Hogan's subjective testimony that he is completely debilitated, including unremarkable mental status exams, normal physical exams, and stable on treatment. (Tr. 16-23.) Further, the ALJ reduced the RFC "to account for his impairments, subjective complaints, and supported limitations." (Tr. 23.)

Turning finally to Hogan's claim the ALJ cherry picked unremarkable examination findings, this argument likewise fails. Hogan references portions of Dr. Owen's report, citing a finding that he has a mild limp in his right leg,

9

significant atrophy of the right calf, L5 or S1 radiculopathy, and diminished range of motion. (Doc. 19 at 14 (citing Tr. 470).) But this evidence does not mean the RFC is unsupported by substantial evidence. The ALJ recognized Hogan had impairments and accordingly found a restrictive RFC, including only occasionally climbing of ramps or stairs but no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling and crouching; no crawling; frequent handling and fingering; must avoid concentrated exposure to extreme cold, extreme heat, and vibration; and no exposure to hazardous machinery or unprotected heights. (Tr. 16.) While the evidence indeed shows Hogan suffered limitations from impairments, the Court "may not decide facts anew [or] reweigh evidence." *Moore*, 405 F.3d 1208 at 1211. To be sure, an ALJ must consider all relevant record evidence. 20 C.F.R. § 416.920(a)(3). However, the regulations do not require an exhaustive discussion of the evidence when evaluating the consistency and supportability of an opinion. *See* 20 C.F.R. § 416.920c(b)(2). "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211. The ALJ's decision here meets these standards.

But even setting all this aside, Hogan shows no error. A claimant's RFC is an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1546(c);

*Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("[T]he task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors[.]"). An ALJ must consider all relevant record evidence in formulating an RFC, not just the medical opinions. 20 C.F.R. § 404.1520(a)(3). The ALJ's decision shows he considered and accounted for Dr. Owen's opinion. And the resulting RFC is supported by substantial evidence. *See Sesler v. Comm'r of Soc. Sec.*, No. 8:20-cv-2835-DNF, 2021 WL 5881678, at *6 (M.D. Fla. Dec. 13, 2021) ("As long as the ALJ properly evaluated the medical opinion—as he has done here—the only issue is whether substantial evidence support's [*sic*] the RFC assessment.").

### B. *Bennett McAllister, M.D.*

Hogan next claims the ALJ failed to properly evaluate opinions in a "Mental Residual Functional Capacity Questionnaire" completed by his treating psychiatrist, Bennett McAllister, M.D. (Doc. 19 at 15-18.) Hogan presses five arguments. First, he claims the ALJ failed to account for the waxing and waning nature of mental illness. Second, he claims the ALJ failed to credit his testimony. Third, he claims the ALJ failed to establish a logical bridge from the evidence to his finding that the opinion was inconsistent with other medical evidence. Fourth, he claims that had the ALJ agreed with Dr. McAllister's opinions, SSR 85-15 would require a disability finding. And fifth, he claims the ALJ should have included off-task behavior in the hypothetical

question to the vocational expert, which is supported by Dr. McAllister's opinion.

In a check-box questionnaire (Tr. 517-20), Dr. McAllister opined that Hogan had marked to extreme limitations in social interaction, sustained concentration and persistence, and adaptation. (Tr. 517-20.) Dr. McAllister also opined Hogan was likely to deteriorate if placed under stress and he was not capable of handling his own funds. (Tr. 520.)

Contrary to Hogan's claim, the ALJ shared how he evaluated supportability and consistency and properly determined that Dr. McAllister's opinion was unpersuasive. (Tr. 22-23.) The ALJ found that Dr. McAllister's opinion was not supported by his mental status findings. (Tr. 22-23.) For instance, Hogan's speech showed no abnormalities of rate, volume, or articulation; his language skills were intact; hallucinations and delusions were not present, his behavior was appropriate; associations were intact and thinking was logical; thought content was appropriate; no signs of cognitive difficulties; memory was intact for both recent and remote events; no signs of anxiety; normal attention span and no signs of hyperactivity; insight and judgment appeared intact; denied suicidal or homicidal ideas or intentions; and no signs of a thought disorder. (Tr. 23, 453, 458, 463, 481.) Thus, the ALJ properly considered the supportability factor in rejecting Dr. McAllister's opinion. (Tr. 22-23); *see* 20 C.F.R. § 404.1520c(c)(1).

As the ALJ indicated, Dr. McAllister's opinion was also inconsistent with the psychiatric findings from other sources in the record, including those from the consultative examiner and his family physician. (Tr. 22-23.) For instance, mental status examinations from his family physician show normal thought content and perception, normal cognitive function, with normal speech and affect. (Tr. 350, 354, 358, 362, 366, 370, 374). The ALJ also found Dr. McAllister's opinion inconsistent with Hogan's activities of daily living that show some level of work activity even though it has been sporadic, performing some household chores, and engaging in some socialization. (Tr. 23, 86.) This evidence contradicts Dr. McAllister's opinion, so the ALJ properly found the opinion inconsistent with the other evidence of record. *See* 20 C.F.R. § 416.920c(c)(2). At bottom, substantial evidence supports the ALJ's evaluation of Dr. McAllister's opinion.

Hogan's logical bridge argument fails for the same reason. A logical bridge, as discussed above, does not alter the substantial evidence standard, which is met here. The regulations do not prevent an ALJ from referring to evidence discussed elsewhere in the decision when evaluating medical opinions. *See Rice*, 384 F.3d at 370 n.5.

Hogan's argument that the ALJ failed to credit his testimony misses the mark for the same reasons it failed above. Hogan does not support his

13

argument under the Eleventh Circuit pain standard, and even applying the standard, the ALJ did not err.

Hogan's waxing and waning argument also falls short. Hogan acknowledges that Dr. McAllister's mental status examination findings were largely unremarkable. Nevertheless, he claims the ALJ failed to account for the mental status exams taking place in a controlled clinical setting which are not indicative of his behavior in a stressful environment. (Doc. 19 at 16.) But these arguments essentially ask the Court to reweigh the evidence, which is not allowed. "Resolution of conflicts in the evidence, including conflicting medical opinions and determinations of credibility are not for the courts; such functions are solely within the province of the Secretary." *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973).

Hogan's reliance on SSR 85-15 is misplaced. SSR 85-15 provides a framework for evaluating solely non-exertional limitations in relation to the Medical Vocational Guidelines. The ALJ found Hogan capable of light work and included both exertional and non-exertional limitations in the RFC. (Tr. 16.) Thus, SSR 85-15 does not govern here. *See, e.g.*, *Barker v. Comm'r of Soc. Sec.*, No. 6:15-CV-159-ORL-CM, 2016 WL 1178556, at *4 (M.D. Fla. Mar. 26, 2016); *Bruton v. Comm'r of Soc. Sec.*, No. 6:16-CV-1209-ORL-37DCI, 2017 WL 9362923, at *8 (M.D. Fla. Aug. 25, 2017); *Narlock v. Comm'r of Soc. Sec.*, No. 607-CV-524-ORL-31KRS, 2008 WL 3364690, at *8 (M.D. Fla. Aug. 8, 2008).

14

But even if SSR 85-15 applies, there was no error. The ALJ found Hogan could perform the basic mental demands of unskilled work, including dealing with occasional decision-making and occasional changes in the work setting. (Tr. 16.) This finding is supported by substantial evidence, which included examinations where Hogan exhibited no serious mental status abnormalities. (*See, e.g.*, Tr. 509, 513; *see also* Doc. 19 at 23-14 (outlining evidence offered regarding Hogan's mental capacity).) Thus, there is no apparent conflict between the ALJ's findings and SSR 85-15.

Hogan's final argument—that the ALJ should have included limitations regarding off-task behavior in the hypothetical questions to the vocational expert—fails because the ALJ does not have to include any unsupported limitations in his hypothetical questions to the VE or accept VE testimony regarding unsupported limitations. *Graham v. Bowen*, 790 F.2d 1572, 1576 (11th Cir. 1986) (if an element of a hypothetical is not supported by substantial evidence the ALJ may reject it).

While a different factfinder may well have credited Drs. Owen and McAllister's opinions, that is not the test. The dispositive question here is whether there is "such relevant evidence as a reasonable mind might accept as adequate" to support the ALJ's conclusion. *Biestek*, 139 S. Ct. at 1154. "The substantial evidence threshold is not high and defers to the presiding ALJ, who heard testimony and reviewed the medical evidence." *Rodriguez v. Berryhill*,

15

836 F. App'x 797, 803 (11th Cir. 2020). Given this low bar, the Court will affirm.

That leaves one final issue. Hogan argues the ALJ's errors were not harmless. (Doc. 19 at 18-20.) But harmlessness only comes to bear if there were errors. Hogan has demonstrated none, and thus this argument is moot.

The Court thus **AFFIRMS** the Commissioner's decision and directs the Clerk to enter judgment for the Commissioner and against Donald James Hogan and close the file.

**ORDERED** in Fort Myers, Florida this December 20, 2022.

Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record

16